**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

BARBARA SKINNER                                                                PLAINTIFF

V.                                                            CAUSE NO. 3:14-CV-256-CWR-FKB

BLUESTEM BRANDS, INC., *d/b/a*                                         DEFENDANT
FINGERHUT

## ORDER

Before the Court are the parties' cross-motions for summary judgment. Docket Nos. 17,

34. The motions are fully briefed and ready for adjudication.

**I.       Factual and Procedural History**

In 2012, Barbara Skinner opened a line of credit with Fingerhut, a catalog sales company,

to purchase goods from Fingerhut. In so doing she agreed to written terms which permitted

Fingerhut to call her cell phone using an automated dialing system.

In 2013, Skinner fell behind on her payments, allegedly because one of the goods she

purchased, a tablet-style computer, was damaged on arrival and Fingerhut had repeatedly failed

to send her a return shipping label. Her non-payment triggered a series of autodialed phone calls.

On January 15, 2014, Skinner asked Fingerhut to stop calling her cell phone. As she

explained to the customer service agent, "I mean, they're calling five and six or seven times a

day, Saturdays and Sundays and everything and when I answer, there's nothing but static and it

just hangs up. . . . I don't want you calling my cell phone like this."

Between that request and the end of March 2014, however, Fingerhut called Skinner's

cell phone 307 times. Of those calls, either 161 or 163 – the parties do not agree – were dialed by

automatic means. Fingerhut often autodialed Skinner several times a day.

Skinner continued to ask Fingerhut's agents to stop calling her cell phone. Transcripts show that she made such requests on March 8, 2014 ("Why are you calling my cell phone? I asked you all not to call my cell phone.") and March 16, 2014 ("I told them not to call my cell phone and they keep calling my cell phone. . . . If I'm asking you not call my cell phone, why are you still calling it then? . . . Now, I'm going to remind you, again, my cell phone, do not call my cell phone and you be blessed."). She again complained that she was receiving calls on Sunday.

In response, Fingerhut's agents told her that there were "no notes" memorializing her earlier do-not-call requests, that she could not stop Fingerhut's calls until she paid her debt, that she had to call the customer service department to get a return shipping label for the tablet, and (somewhat incongruously) that she could not get a return shipping label from customer service until she paid her debt.

When do-not-call requests are made, Fingerhut's written policy requires agents to tell the customer that the company will "suppress all future phone calls" and will instead send future communications in writing. Despite that policy, Fingerhut's corporate representative testified in a deposition in this case that its agents in fact have discretion to dishonor do-not-call requests.

Frustrated, Skinner filed this suit in March 2014. She sought statutory damages under the Telephone Consumer Protection Act (TCPA). 47 U.S.C. § 227(b)(1)(A)(iii). Those damages are $500 per autodialed call made to a cell phone without consent, and $1,500 for each such call if the Court finds that the call was made willfully or knowingly. *Id.* § 226(b)(3). To that latter inquiry, Fingerhut's corporate representative testified that all of the calls in question, *i.e.*, autodialed calls to Skinner after January 15, 2014, were intentionally made, were not the product of mistake, and were made with knowledge that an autodialer was being used to place the call.

Fingerhut now argues that it has no liability because Skinner consented in the credit agreement to receive autodialed calls to her cell phone. It says that under Utah law, which is the state law governing the credit agreement, she did not have the right to revoke that consent.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III.    Discussion

### A.     Liability

In TCPA cases, the consumer complaining about unwanted phone calls often has a contractual relationship with the company placing the calls. *See, e.g.*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1247 (11th Cir. 2014) (credit card); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 267 (3d Cir. 2013) (credit card); *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp.

2d 744, 745 (W.D. Tex. 2011) (student loan); *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 813 (S.D. Tex. 2014) (auto loan). It follows that the terms of the contract could have some bearing on the consumer's complaint. If the consumer has, in the contract, waived all of their rights to federal consumer protection laws, how can they later complain that unwanted phone calls violate those laws?

In this case, Skinner initially agreed to the following term when she opened her line of credit:

> **Consent to Use of Telephone Numbers.** You expressly consent to receiving calls and messages, including autodialed and prerecorded message calls, from WebBank, Fingerhut, their affiliates, marketing partners, agents and others calling at their request or on their behalf, at any telephone numbers that you have provided or may provide in the future (including any cellular telephone numbers).

Docket No. 32-1, at 19. This was consent for Fingerhut to autodial her cell phone. Skinner obviously does not seek damages for autodialed calls Fingerhut made to her during the time of her consent.

The more difficult question is whether Skinner could later revoke her consent, given the language of the credit agreement.

The analysis begins with the increasingly-accepted proposition that the TCPA permits consumers to revoke their initial consent to receive autodialed calls. *E.g.*, *Osorio*, 746 F.3d at 1255 ("Congress intended for the TCPA to incorporate the common-law meaning of consent, including its revocation"); *Gager*, 727 F.3d at 267 (concluding that a revocation right existed in light of "the text of the statute, the FCC's interpretation of the statute, the statute's purpose, and our understanding of the concept of consent as it exists in the common law"); *see also* Andrew D. Bluth et al., *Client Alert: Stop Calling Me: Can Consumers Waive The Right to Revoke Consent under the TCPA?*, Pillsbury Law (Jan. 14, 2015) ("Most authorities and courts agree

4

that, under the TCPA, consumers have the right to revoke previously given consent to be called

using an [automated telephone dialing system] or pre-recorded message.") (collecting cases),

*available at* http://www.pillsburylaw.com/publications/stop-calling-me-can-consumers-waive-

the-right-to-revoke-consent-under-the-tcpa.

Fingerhut argues that Skinner's revocation of consent was ineffective because of the

language in the credit agreement. The argument is unpersuasive for a few reasons.

First, Fingerhut has not pointed to any legal authority giving parties permission to

contract around the TCPA. If they could, one imagines that every company in the nation – from

Dell Financial and State Farm Bank, to every student loan provider, to every catalog sales

company – would amend their contracts to require customers to waive every right their

customers currently have. The lack of authority suggests that no such race to the bottom is

permitted.

Second, Fingerhut has not pointed to any language in its contract with Skinner where she

actually waives her revocation rights under the TCPA. Fingerhut's argument assumes that the

above-quoted contractual term forever gave it permission to autodial her cell phone. But the

plain language of the contract does not address whether Skinner could or could not revoke her

consent to receive autodialed calls to her cell phone. The contract is silent on that issue.

Third, the Court is not persuaded that one can "read into" this language an effective,

permanent revocation of rights under the TCPA. Under any law applicable here, a waiver should

be clear enough for a court to fairly conclude that the person knowingly and voluntarily intended

to waive their rights. *See Charles v. Nasser Heavy Equip., Inc.*, No. 1:06-CV-556, 2008 WL

3992648, at *2 (S.D. Miss. Aug. 22, 2008) (listing, in contract interpretation case, the factors

courts must consider in determining whether a wavier was knowing and voluntary); *New*

*Hampshire Ins. Co. v. Smith*, 357 So. 2d 119, 121 (Miss. 1978) ("Clear and convincing evidence is required to establish waiver of important provisions of an insurance contract"); *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 942 (Utah 1993) ("A waiver is the intentional relinquishment of a known right. To constitute waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it."). As mentioned above, the language of this contract is not clear as to revocation of Skinner's TCPA rights. Whether a more clear waiver would have been made voluntarily and with her knowledge is a closer question, but it seems relevant that the term was not negotiable and Skinner was not represented by counsel. *See Charles*, 2008 WL 3992648, at *2.

Finally, although there is no circuit precedent exactly on point, the Third Circuit's principal TCPA case suggests that Skinner's contractual agreement does not override her rights under federal law:

> Dell asserts that basic principles of contract law should preclude Gager from revoking her prior express consent. In short, Dell posits that a creditor will want to know in advance whether a credit applicant will consent to automated phone calls and that this knowledge is part of the "consideration" that the applicant offers in support of her application. Although Dell is correct that the level of contact that a debtor will consent to may be relevant to the negotiation of a line of credit, the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement. More importantly, *Dell's argument that its contractual relationship with Gager somehow waives her rights under the TCPA is incorrect. The fact that Gager entered into a contractual relationship with Dell did not exempt Dell from the TCPA's requirements. As discussed above, she retained the right to revoke her prior express consent.*

*Gager*, 727 F.3d at 273-74 (emphasis added). Fingerhut argues that *Gager* is distinguishable because the contractual language was different. But the language of our credit agreement speaks for itself. It does not show that Skinner waived her TCPA right to revoke prior consent.[1]

---

[1] Of potential interest is the fact that the credit agreement in *Gager* was also made under Utah law. *See Gager v. Dell Financial Servs., LLC*, No. 3:11-CV-2115-RDM, Docket No. 5-4 at 4 (M.D. Pa. Dec. 2, 2011). The Third Circuit's decision, then, necessarily found that Utah contract law did not override Gager's rights under the TCPA.

Since Fingerhut automatically dialed Skinner's cell phone after she had revoked her consent to receive such calls, it has violated the TCPA.

**B.      Damages**

The parties dispute how many autodialed phone calls Fingerhut made to Skinner. It would be inappropriate under governing summary judgment standards for this Court to resolve that fact dispute. The parties should prepare to present evidence on this question at trial.

**IV.    Conclusion**

The motions are denied.[2]

**SO ORDERED**, this the 8th day of July, 2015.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[2] Having received defense counsel's letter dated May 5, 2015, all counsel are reminded to copy their opponent on all communications with the Court.